UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

    CADARET GRANT & CO.,

                          Plaintiff,                **<u>ORDER</u>**

        -against-                    CV 21-6665 (GRB)(AYS)

    GREAT AMERICAN INSURANCE
    COMPANY,

                          Defendant.
---------------------------------------------------------X

**ANNE Y. SHIELDS, Magistrate Judge:**

      Plaintiff Cadaret, Grant & Co., Inc. ("Cadaret") commenced this action for breach of

contract and declaratory judgment seeking coverage under the terms of a Financial Institution

Bond (the "Bond") issued by Defendant Great American Insurance Company ("GAIC").

Presently before the Court is Cadaret's motion to compel the production of documents withheld

from discovery by GAIC on the grounds of the attorney-client privilege and the work product

doctrine. After the parties submitted a letter outlining their positions, the documents at issue were

submitted to this Court for <u>in camera</u> review. The full privilege log was presented to the Court

with those documents still at issue highlighted for the Court's convenience. A copy of that

privilege log is annexed to this opinion. Upon review of the documents at issue, and for the

reasons set forth below, the motion to compel GAIC to disclose the documents at issue is granted

in part and denied in part. In particular, only the letter dated March 22, 2021, described in the

privilege log as a letter "providing coverage counsel's legal opinion" for which attorney-client

and work product protection is claims need not be produced. That document is covered by the

attorney-client privilege. GAIC fails to sustain its burden of showing that any other document is privileged and all must therefore be produced.

BACKGROUND

I.      Facts Underlying Cadaret's Claim for Coverage under the Bond

Cadaret seeks coverage for losses suffered by its clients at the hands of an individual who has pled guilty and accepted civil responsibility with respect to his activity while working as a representative of Cadaret. Briefly stated, that employee, Steven Pagartanis ("Pagartanis") engaged in a fraudulent investment scheme using Cadaret client funds for his own personal purposes. As described in the Complaint, Pagartanis was charged in 2018 on New York State felony charges as well as Federal criminal charges including securities fraud, wire fraud and money laundering. He was also charged with securities violations in a Federal civil complaint (the "SEC Action"). On December 10, 2018, Pagartanis pled guilty to a count in the Federal indictment. Thereafter, in 2021, a final judgment was entered against Pagartanis in the SEC Action. As a result of Pagartanis's conduct Cadaret sustained the losses for which it presently seek coverage.  See generally Complaint ("Compl.") herein appearing as Docket Entry ("DE") 1.

II.     Cadaret's Submitted Proofs of Loss

On April 18, 2018, Cadaret provided notice to GAIC of a potential loss under the terms of the Bond. Compl. ¶ 33. Such losses arose as a consequence of Cadaret's settlement of several client claims arising out of Pagartanis's conduct. Id. at ¶ 35. On April 8, 2019, Cadaret submitted an interim Proof of Loss ("POL") to GAIC in the amount of $2,875.000, which it claimed as the covered losses that were justifiable at the time. Id. at ¶ 36. On May 23, 2019, Cadaret submitted its second interim POL in the amount of $103,500. Id. at ¶ 37.  On June 26, 2019, Cadaret submitted its third POL, in the amount of $35,000. Id. at ¶ 38. On May 22, 2020, Cadaret

submitted its fourth interim POL to GAIC in the amount of $3,118,500. Id. at ¶ 40. Since then, Cadaret has submitted notice of additional claims, including two settled prior to the filing of this matter, which were in the total amount of an additional $187,500. Id. at ¶ 41.

III.     GAIC Denial of Coverage and this Action

By letter dated April 22, 2021, GAIC denied covered for Cadaret's claimed losses. While the letter responds only to the interim POL's, Cadaret interprets the letter as GAIC's denial of any and all Bond coverage for claims related to Pagartanis's conduct. Id. at ¶ 42. No party argues otherwise.

IV.     Facts Relevant to the Asserted Claims of Privilege

GAIC denied coverage under the terms of the Bond on April 22, 2021. This matter was commenced approximately eight months later, on December 1, 2021. The documents at issue herein were generated prior to both dates; the last dated document for which privilege is claimed is dated April 20, 2021.

The individuals whose names appear on the documents are: (1) Timothy Markey ("Markey") a claims adjuster working for GAIC; (2) Michael Graziano, Esq. ("Graziano") an attorney working as outside counsel for GAIC at the law firm of Eckert Seamans ("Eckert"), and (3) John Ellison, Esq. ("Ellison") an attorney working for Cadaret at the law firm of Reed Smith.[1]

The documents at issue reveal that as early as April of 2019, GAIC had retained outside counsel Graziano to discuss claims under the Bond. Thus, in an email dated April 8, 2019 a

---

[1]     Other individuals whose names appear on the documents are not necessary to discuss for purposes of this decision. They appear to be either administrative employees (the likely position of Cathy Moran at GAIC) associates at the parties' law firms or, in those in the chain of administrative command at either Cadaret or GAIC. Their particular positions or titles make no difference in the analyses herein.

Senior Financial Product Claims Representative at GAIC wrote to Graziano advising him that Markey had yet to receive a POL from Cadaret. It also advised Graziano that Cadaret had been settling with many defrauded victims, and that he wanted to make sure that Graziano was apprised of the background of this matter prior to GAIC's receipt of the POL's. See Document bearing Bates No. GAIC (hereinafter "GAIC No.") 000396.

The bulk of the documents at issue are emails exchanged between Markey and Graziano between February 27, 2020 and February 12, 2021 which reveal Graziano's involvement in GAIC's investigation of Cadaret's claims. See GAIC Nos. 001028; 001031; 001033; 001066; 001069; 001079; 001141; 002547-002253; 002598- 002601; 002730-002731; 002734-002738; 002754-002755; 002928-002930; 002933-002937; 002939-002941. These emails include Markey's transmission of information regarding Cadaret's claims to Graziano and those asking that Graziano draft, for Markey, correspondence to be sent under Markey's name to counsel for Cadaret.

The remaining documents at issue are an email transmitting a draft of GAIC's coverage position, a seventeen-page letter dated March 22, 2021 from Graziano to Markey containing Graziano's legal opinion regarding coverage, and two emails following that letter. The transmittal email accompanying that letter appears as GAIC No. 002954-55. The March 22, 2021 letter bears GAIC Nos. 002956-002972. The final documents at issue are those stating Graziano's intent to forward the denial of coverage letter to Ellison by the end of the week of April 26, 2021, GAIC No. 002975-002977, and an email proposing dates and times for a call with Reed Smith. GAIC 002978- 002981.

V.      The Present Motion

The parties' positions are set forth in a joint letter dated June 6, 2020. DE 25.[2] GAIC submitted a detailed privilege log (the "Log") with that letter. See DE 25 at Exhibit B. The Log discloses the date of each document and its recipients. It also contains a description of the type and subject matter of each document, as well as the particular privilege claimed. As noted, a copy of the Log (with the documents remaining at issue highlighted) is annexed hereto. The first twenty documents described in the Log (which were generated prior to GAIC's denial of coverage) claim attorney-client privilege; the last four (consisting of the March 22, 2021 letter from Graziano to Markey and related emails) clam protection under both the attorney-client privilege and the attorney work product doctrine. See DE 25 at Exh. B. On June 20, 2023, pursuant to an order of this Court, all documents at issue were provided to this Court for in camera inspection. Upon review of the parties' positions and the documents at issue, and for the reasons set forth below, the Court directs that GAIC produce all documents except for the March 22, 2021 letter from Graziano to Markey appearing as GAIC 002956-002972.

<u>DISCUSSION</u>

I.   <u>Legal Principles</u>

The law of the State of New York governs the issue of whether or not the attorney-client privilege applies. Federal law applies to the question of whether the work product doctrine applies. <u>State Farm Mut. Ins. Co. v. 21st Century Pharmacy, Inc.</u>, 2020 WL 729775, at *2-3

---

[2]   In addition to the privilege issue decided herein the parties' communicated to the Court an additional discovery dispute (referred to in DE 25 as "Issue Number Two"). With regard to that dispute, this Court directed Plaintiff "to tailor its request for documents that explain the 'scope, application, or meaning' of provisions and exclusions relied on for the claim denial." Electronic Order dated June 13, 2023. Plaintiff was also "directed to tailor the request in both time and scope, such as seeking documents only relating to similar claims." Id. Counsel were directed to "work together to properly tailor the request" and to thereafter "confer regarding appropriate search terms." Id. The Court is hopeful that the parties' efforts have mooted the request for Court intervention as to this dispute.

(E.D.N.Y Feb. 12, 2020); Roc Nation LLC v. HCC Internat'l. Ins. Co., PLC, 2020 WL 1970697,

at *2-3 (S.D.N.Y. Apr. 24, 2020).  Whatever the claim, the burden is on a party claiming the

protection of a privilege to provide evidence establishing the essential elements of the privileged

relationship. In re Grand Jury Subpoena, 750 F.2d 223, 224-225 (2d Cir. 1984).

      A.     The Attorney-Client Privilege

As to the attorney-client privilege, New York law provides that the party claiming

privilege bears the burden of showing: "the existence of an attorney-client relationship, a

communication made within the context of that relationship for the purpose of obtaining legal

advice, and the intended and actual confidentiality of that communication." Roc Nation, 2020

WL 1970697, at *2, quoting Safeco Ins. Co. of Am. v. M.E.S., Inc., 289 F.R.D. 41, 46 (E.D.N.Y.

2011) (citation omitted); see ACLU v. NSA, 925 F.3d 576, 589 (2d Cir. 2019); American

Trucking and Transp. Ins. Co., RRG v. Liberty Mut. Ins. Co., 2015 WL 13724526, *2 (E.D.N.Y.

Dec. 3, 2015).

New York courts are often faced with deciding claims of attorney-client privilege in the

context of insurance coverage disputes. In particular, such courts have been called upon to decide

claims of privilege with respect to documents generated between outside counsel and insurance

company claims adjusters. See e.g., Melworm v. Encompass Indem. Co., 112 A.D.3d 794, 795,

977 N.Y.S.2d 321, 323 (2d Dep't 2013). Central to such privilege decisions is the issue of

whether outside counsel is performing the role of a claims investigator, or that of an attorney

offering legal advice. Documents reflecting claims investigation activities are subject to

discovery even if those activities were performed by an attorney. Nat'l Union Fire Ins. Co. of

Pittsburgh v. TransCanada Energy USA, Inc., 119 A.D.3d 492, 493, 990 N.Y.S.2d 510, 511-12,

(1st Dep't 2014); Melworm, 977 N.Y.S.2d at 323; Brooklyn Union Gas Co. v. Am. Home

Assurance Co., 23 A.D.3d 190, 191, 803 N.Y.S.2d 532, 534 (1st Dep't 2005); Otsuka Am., Inc. v. Crum & Forster Spec. Ins. Co., 2019 WL 4131024 at *2 (N.Y. County Aug. 30, 2019).

Where, as here, a court must decide whether documents generated between a claims adjuster and outside counsel are privileged the question is whether counsel is acting as an investigator of a claim (the job of a claims adjuster) or providing legal advice to a client. The latter class of documents is protected by the attorney client privilege; the former is not. See 21st Century Pharmacy, Inc., 2020 WL 729775, at *3; see Nat'l Union Fire Ins. Co., 119 A.D.3d at 493 ("[d]ocuments prepared in the ordinary course of an insurer's investigation of whether to pay or deny a claim are not privileged, and do not become s'"merely because [the] investigation was conducted by an attorney'""); Brooklyn Union Gas Co., 23 A.D.3d at 191.

B.     The Work Product Doctrine

Application of the work product doctrine is governed here by Federal law. Weber v. Paduano, 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003). That doctrine, codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure is "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (citing Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)) (internal quotation marks omitted). For the work product doctrine to apply, the material at issue must have been prepared by a party or their representative "in anticipation of litigation". Fed. R. Civ. P. 26(b)(3)(A); Weber, 2003 WL 161340, at *3. Conversely, protection does not exist for "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." Id. at 1202.

Like cases involving claims of attorney-client privilege, a number of cases deciding application of the work product doctrine arise in the context of documents that discuss insurance claims. E.g., 21st Century, 2020 WL 729775 at *2. As quoted in 21st Century, " courts have routinely held that documents created during any part of a factual investigation to arrive at a claim decision are prepared in the ordinary course of an insurer's business and are not protected by the work-product privilege." 21st Century, 2020 WL 729775 at *2.  There may, however "come a point when an insurance company's activities shift from the regular and ordinary course of business to activities taken in "anticipation of litigation". Id., quoting, Ocean Walk Ltd. v. Certain Underwriters at Lloyd's of London, No. 03 Civ. 5271 (DRH) (ARL), 2005 WL 8160993, at *3 (E.D.N.Y. Jan. 25, 2005). "An insurer may demonstrate that it had reached this tipping point by presenting 'specific competent proof that it possessed a 'resolve to litigate 'when the documents were created.'" AIU Ins. Co. v. TIG Ins. Co., No. 07 Civ. 7052 (SHS) (HBP), 2008 WL 4067437, at *12-13 (S.D.N.Y. Aug. 28, 2008) (citations omitted); see Adlman, 134 F.3d at 1202.

When deciding questions regarding the prospect of litigation the court must bear in mind that it is the "routine business of insurance companies to investigate and evaluate claims." Mt. Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc., No. 96 Civ. 5590 (MJL) (HBP), 1998 WL 729735, at *5 (S.D.N.Y. Oct. 16, 1998). Such companies may engage counsel on a routine basis, or only in cases involving large claims. The issue is not, however, the size of the potential claim but whether there is a prospect of litigation at the time that the document was generated. Facts relevant to deciding the claim of privilege include the date counsel was engaged and the date the claim was denied. See Roc Nation LLC, 2020 WL 1970697, at *2-3.

II.    Disposition of the Motion

    A.    Documents for Which Only the Attorney-Client Privilege is Claimed

GAIC claims that the first twenty of the documents highlighted in the Log are protected by the attorney-client privilege. All of these documents are emails exchanged prior to the March 22, 2021 letter explaining denial of coverage under the Bond. Without applying a bright-line approach rooted only in the date that GAIC denied coverage, the Court's review of these documents results in a holding that none of the first twenty documents are protected by the attorney-client privilege.

First, many documents are nothing more than transmittal emails that either refer to requests for information, or the forwarding or downloading of such information. These documents include, for example, GAIC 000396 (an email from Markey's co-worker to Graziano telling Graziano that Markey had not yet received any POL from Cadaret); GAIC 001066 (transmitting copies of Cadaret documents to Graziano); GAIC 001079 - 001082 (sharing a Cadaret letter and scheduling a phone call); GAIC 0010141 (transmitting information about how to upload a file); GAIC 002598-00260 (Graziano explaining to Markey the process for uploading a file from Reed Smith and containing Markey's agreement that revealing Graziano's identity to Reed Smith does not concern him); GAIC 002928-002940 (Markey telling Graziano to speak directly to Ellison); GAIC 002933-002935 (stating that a file was successfully downloaded).

More importantly, while these first twenty documents reflect communications between GAIC claims representative Markey and GAIC outside counsel Graziano, they demonstrate work performed by Graziano as a claims investigator rather than as legal counsel. They reflect discussions between Markey and Graziano, typically led by Markey, which culminate in typical

requests for information regarding Cadaret's claims. Such documents reveal counsel working in an investigatory role.

For example, Document No. GAIC 001028 is a clear indication that Graziano was called upon to perform work properly characterized as claims investigation. Thus, in this document Markey asked Graziano what documents Markey should seek in order to give Caderet an interim coverage position. Conducting an investigation prior to providing a coverage position is Markey's job. To perform this job Markey no doubt routinely asks GAIC's insureds for documents. Here, he simply asks Graziano to be a part of a function that is central to Markey's essential job description, i.e., to gather information from the insured. The email asks Graziano to be a part of Markey's inquiry to the insured. Similarly, in GAIC No. 001031, Markey asks Graziano to prepare a request to Cadaret for more information. Markey's request to Graziano regarding such a letter derives from Markey's knowledge and experience as a claims investigator. In that role, Markey knows that GAIC will need to ask for more information from its insured. He could easily have drafted his own request to further his claims investigation. That he asked Graziano to write the request for him shows that Graziano was acting as a claims investigator, and not providing a legal opinion for his client. It was Markey who outlined the subject for the investigatory letter; Graziano simply wrote the letter for him. GAIC 001033 is not privileged for the above reasons and also because it simply forwards publicly available information about the criminal judgment against Pagartanis along with a draft letter that Markey asked Graziano to write. This is also true of GAIC 002552-002555. The Court need not describe in detail the contents of each of the twenty documents for which only the attorney- client privilege is claimed. This is because the Court finds, with respect to all of these documents, that Graziano was acting as a claims investigator and not supplying legal analysis. Therefore, the

Court holds that none of the first twenty documents in the privilege log (for which only the attorney-client privilege is claimed) are within the privilege. They must all therefore be produced.

B.      Documents Claimed to be Within Attorney-Client Privilege and as Work Product

GAIC claims both attorney-client and work product protection for the last four documents listed in the Log. As to these documents, the Court holds that only the letter from Graziano to Markey dated March 22, 2021 (which bears GAIC Nos. 002956-002972) falls within the claim of privilege. Unlike the documents above, this document shows Graziano's legal analysis and opinions. It contains legal advice and is therefore primarily legal, rather than investigatory) in nature. It is covered by the attorney client privilege. The document preceding this legal opinion is an email that is akin to a cover letter transmitting the legal opinion.  It contains no legal analysis and is not privileged. Similarly, the remaining documents, although prepared after the March 22, 2021 letter, are not privileged. GAIC 002975-2977 is a scheduling email among Markey, Graziano and a person at Reed Smith seeking to set up a telephone call. Finally, GAIC 002978-2981 reflects a scheduling of the call referred to in the earlier email. It too, is not a privileged document.

CONCLUSION

For the reasons set forth above, the motion to compel appearing as Docket Entry 25 herein is granted with respect to all documents except the letter bearing GAIC Bates Nos. 002956-002972, which document is covered by the attorney-client privilege. With the exception

of this document, all documents withheld on claims of attorney-client privilege and/or the work

product doctrine must be produced.

Dated: Central Islip, New York
       July 25, 2023

                                        /s/ Anne Y. Shields
                                       ANNE Y. SHIELDS
                                       United States Magistrate Judge